**BLACKFORD et al. v. POWELL et al.**
**GUARANTY TRUST CO. OF NEW YORK et al. v. SEABOARD AIR LINE RY. CO. et al.**

**No. 5422.**

Circuit Court of Appeals, Fourth Circuit.
Oct. 11, 1945.

See also 60 F.Supp. 607.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

R. Bayly Chapman, of Baltimore, Md. (Llewellyn S. Richardson, of Norfolk, Va., on the brief), for appellants.

W. R. C. Cocke, of Norfolk, Va., and Leonard D. Adkins, of New York City (Harold J. Gallagher and Edwin S. S. Sunderland, both of New York City, Leon T. Seawell, of Norfolk, Va., Irwin L. Tappen, of New York City, George M. Lanning, of Norfolk, Va., Carlyle Barton, of Baltimore, Md., Theodore S. Garnett and Robert D. Ruffin, both of Norfolk, Va., Smith & Cross, of Baltimore, Md., Meredith & Meredith, of Richmond, Va., Paul R. Kach, of Baltimore, Md., Willard R. Ashburn, of Norfolk, Va., and Edward E. Watts, Jr., of New York City, on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

PER CURIAM.

This appeal in the receivership proceeding for the reorganization of the Seaboard Air Line Railway Company is taken from an order of the District Court of April 27, 1945, dismissing a petition of the appellants which asked the court to direct the receivers to pay out of the funds in their hands to the holders of the outstanding 5% Adjustment Mortgage Gold Bonds of the Railway Company certain unpaid interest that had matured on the bonds prior to 1931 and also to pay on account of the principal of the bonds such amount as the court might find proper. The petition was filed on February 9, 1945, by H. J. Blackford and heard on April 12, 1945, at which time the other appellants, W. V. A. Waterman, W. H. B. Simpson and Ed. C. Wright were permitted to join in the petition. It was resisted by the receivers and by the holders of other mortgage issues.

The basis of appellants' complaint is that there are outstanding $2,500,000 of Adjustment Bonds and unpaid accrued interest thereon in the sum of $2,300,000, and that no provision for the payment of these obligations was made in the plan of reorganization submitted to the court by the Special Master on July 20, 1943, which, after modification, was approved by the District Court by its decree of December 10, 1943, 53 F. Supp. 672, affirmed by this court, 145 F.2d 40. It is charged that this treatment of the Adjustment Bonds was unfair for a number of reasons.

(1) It is pointed out that when the receivers were appointed on December 23, 1930, there remained in the hands of paying agents for the payment of interest coupons on the Adjustment Bonds, not presented for payment prior to the receivership, the sum of $20,412.50. This balance was turned over, under an order of court, by the paying agents to the receivers and became assets of the estate. It is not claimed that these funds were impressed with a trust in favor of the unpaid Adjustment Bond coupons, as the decision of this court in Schloss v. Powell, 4 Cir., 93 F.2d 518, is to the contrary, but since the District court, by order of December 20, 1944, authorized the payment of prereceivership coupons of the Seaboard First Mortgage, the Refunding Mortgage and the First and Consolidated Mortgage Bonds which had not been presented for payment prior to the receivership, it is contended that it is inequitable not to accord similar treatment to the Adjustment Bonds.

(2) It is pointed out that during the reorganization proceeding a controversy arose between the holders of the Refunding Mortgage 4% Bonds, issued October 1, 1909, and the holders of the First and Consolidated Mortgage 6% Bonds issued September 1, 1925, as to the respective liens of these mortgages on 408.96 miles of railroad constituting part of the Seaboard System and known as the East Carolina Lines; and that this controversy was solved by a compromise between the contestants which was incorporated in the plan approved by the court. It is charged that as the result of this compromise certain assets were allocated to the Consolidated Mortgage which would have been awarded to the Refunding Mortgage if the dispute had not been compromised and the contentions of the holders of the Refunding Mortgage had prevailed; and hence it is said that by this settlement assets, which should have gone to the holders of the Adjustment Mortgage that was executed on October 1, 1909, prior to the execution of the Consolidated Mortgage, were improperly allotted to the holders of the Consolidated Mortgage.

(3) It is said that funds have accumulated in the hands of the receivers since the report of the Special Master was submitted to the court on July 20, 1943, out of which an allowance should be made to the holders of the Adjustment Bonds, that would be fair and proper in relation to the treatment heretofore accorded the holders of other bond issues of the corporation.

█ It is obvious from the opinion of the District Court and of this court heretofore filed in this proceeding that the present appeal is completely devoid of merit. It is shown in the opinion of the District Court, 53 F.Supp. 672, 680, that the trustee under the Adjustment Mortgage made no claim on behalf of the bondholders and did not participate in the proceedings. The original issue of the bonds amounted to $25,000,000, but in 1929 and 1930 the great majority thereof were exchanged on a diminished basis for Consolidated 6's. Although ample opportunity was given to all such bondholders to make the exchange, holders of $2,500,000 of bonds failed to do so. No exceptions to the Master's report were filed by any of these bondholders until after the time allowed for exceptions had expired; but during the hearing the court permitted exceptions on their behalf to be filed which charged unfair treatment of the bondholders by the management of the corporation and alleged that the wartime earnings of the system were sufficient to justify their participation to some extent. Representatives of the Adjustment Bonds were given full opportunity to be heard; but the court found that they were not entitled to share in the new capitalization. In passing on their exceptions to the plan Judge Chesnut said, 53 F.Supp. 681:

"I cannot find any legal or equitable basis in support of the exceptions. It is not disputed that the bonds have no lien except that wholly subordinate to the Refunding 4's, and it is also clear that the claim on the Refunding 4's is not fully satisfied by the allocation of new securities. As will appear from the annexed tabulation showing the final allocation of new securities, the total claim, principal and interest, of the Refunding 4's amounts to $36,127,360.36. The total par value of all new securities al-

lotted to Refunding 4's is only $18,760,186. While the Consolidated 6% mortgage is subsequent in point of time, and after the further and final consolidation of 1915, it is not shown that the Adjustment 5's have any lien on the property, mostly collateral, securing the 6's. With regard to the contention that the present large System earnings justified some recognition of the Adjustment 5's, it is sufficient to say that there is certainly no evidence before the court from which it can be found that the Adjustment 5's have a legal or equitable claim to any accumulated income as there is not a sufficient amount thereof to satisfy the claim of the Refunding 4's, and indeed no mortgage foreclosure proceeding asking impounding of income has been filed by the trustee for the Adjustment 5's."

No appeal was taken on behalf of any holder of the Adjustment Bonds from the decree of the court; and this is particularly noticeable since the appellant Simpson, who is party to the present appeal and is the owner of all but a small fraction of the bonds held by the four appellants, was the holder of Adjustment Bonds during the time of the hearings before the Special Master. He filed exceptions to the Master's report as a holder of other securities of the corporation, but filed no exception as a holder of Adjustment Bonds and advanced no contentions on their behalf although he was an active participant in hearings before the District Court, and in this court on appeal presented arguments on behalf of the holders of other securities.

■ In view of this history of the litigation, the specific contentions of the appellants may be briefly disposed of. There was no impropriety or unfair discrimination in denying to the appellants the right to be paid the sum of $20,412.50 in the hands of the paying agents, above referred to, notwithstanding the fact that the court authorized the payment of pre-receivership coupons of other mortgages. All of these other mortgages were found to be entitled to recognition and participation in the plan; but none of them was paid in full. On the other hand, participation was denied to the Adjustment Mortgage by reason of its inferior position, and there were no funds in the receivers' hands subject to the lien of that mortgage out of which the payments prayed for could be paid.

■ Nor was there any injury to holders of the Adjustment Bonds by the ratification of the compromise of the controversy which arose between the holders of the Refunding Mortgage Bonds and the holders of First Consolidated Mortgage Bonds. The tabulations in the Special Master's report clearly show that if the compromise had not been made and litigation had resulted in a decision completely favorable to the holders of the Refunding Bonds, the additional payments which they would thereby have received would have still left a deficiency in their claim so that there would have been no excess payable to the holders of the Adjustment Mortgage Bonds.

■ The conclusive answer to the appeal, however, is the patent fact that it is an attempt to set aside the plan of reorganization formulated after years of careful investigation and approved by the District Court and by this court on appeal. No satisfactory excuse or explanation for so extraordinary an effort has been or can be made. Appellant Blackford's bonds were acquired on December 19, 1944, after the decision of this court, and Simpson's bonds were acquired by him partly before and partly after the decree of the District Court on December 10, 1943, and none of the appellants or other holders of the bonds took any action against the plan after that decree until February 9, 1945 when the petition now under consideration was filed. The laches of the appellants has been so gross that they are entitled to no further consideration by the court. Indeed there is much ground in support of the motion of the receivers that the court should impose a penalty upon them for taking an appeal so lacking in justification, as authorized by the statutes, 28 U.S.C.A. Sections 878 and 880, which provide that where a judgment is affirmed by a Circuit Court of Appeals, the court shall adjudge to the appellees just damages for the delay, and single or double costs in its discretion. That the receivers have been put to considerable unnecessary expense admits of no denial; but, on the other hand, it seems quite clear that they have increased the costs of the present appeal by causing unnecessary matter to be printed so that the court, under Article X, Section 7 of its rules, would be justified in withholding or dividing the costs. In this situation it is our opinion that no special order is required but that justice will be done by affirming the order of the District Court, the appellants to pay the costs.

Affirmed with costs.